**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Case No. 15-cv-01634-RM

THE FOURTH CORNER CREDIT UNION,

     Plaintiff,

v.

NATIONAL CREDIT UNION ADMINISTRATION,

     Defendant.

---

## OPINION AND ORDER

---

On July 30, 2015, plaintiff The Fourth Corner Credit Union ("plaintiff") filed a Complaint against defendant the National Credit Union Administration ("NCUA" or "defendant"), seeking judicial review of defendant's rejection of plaintiff's application for federal share deposit insurance. (ECF No. 1.)  More specifically, plaintiff brought 18 causes of action; 1 of which was brought, at least in part, under the Fifth Amendment's Due Process Clause (Claim 1); 2 of which sought declaratory relief (Claims 17 and 18); and the remainder of which were brought under the Administrative Procedures Act ("the APA"), 5 U.S.C. §§ 701, *et seq.*, for judicial review of defendant's actions (Claims 2 through 16, as well as arguably Claim 1 in part).  (*Id.*)

On November 16, 2015, defendant filed a motion to dismiss the Complaint ("the motion to dismiss"), pursuant to Fed.R.Civ.P. 12(b)(1) ("Rule 12(b)(1)") and Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)").  (ECF No. 18.)  Plaintiff has responded in opposition to the motion to dismiss (ECF No. 21), and defendant has filed a reply (ECF No. 22).

## I.     Legal Standard

Motions to dismiss for lack of subject matter jurisdiction take two principal forms: (1) a facial attack, or (2) a factual attack on the allegations in the complaint.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  Here, defendant facially attacks the sufficiency of the allegations in the Complaint.  (*See* ECF No. 18 at 1, 5-6.)  As a result, this Court accepts the allegations in the Complaint as true for purposes of its jurisdictional analysis.  *Holt*, 46 F.3d at 1002.

In evaluating a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135-36 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010).  In the complaint, the plaintiff must allege a "plausible" entitlement to relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556, 127 S.Ct. 1955 (2007).  Conclusory allegations, however, are insufficient.  *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009).  A complaint warrants dismissal if it fails "*in toto* to render [plaintiff's] entitlement to relief plausible."  *Id*. at 569 n.14.

## II.     Discussion[1]

Defendant argues that the Complaint should be dismissed for three principal reasons: (1) plaintiff lacks standing to bring its claims for declaratory relief; (2) this Court lacks subject matter jurisdiction because the APA does not authorize judicial review of its actions; and (3) plaintiff's claim under the Due Process Clause lacks merit.  (*See generally* ECF No. 18.)  The

---

[1] Because the arguments pertaining to whether the Complaint should be dismissed involve largely questions of law, the Court dispenses with setting forth the facts as alleged in the Complaint.  To the extent that the facts are pertinent, the Court will refer to them, as alleged in the Complaint, in its analysis *infra*.

Court will address the arguments with respect to the APA first, and then turn to the standing and Due Process Clause arguments.

### A.        Subject Matter Jurisdiction Under the APA

The burden of establishing subject matter jurisdiction is on the party invoking the Court's jurisdiction. *Smith v. Krieger*, 643 F. Supp. 2d 1274, 1289 (D. Colo. 2009). The APA, however, establishes a "strong presumption in favor of reviewability of agency action." *McAlpine v. United States*, 112 F.3d 1429, 1432 (10th Cir. 1997). The APA provides two means to overcome this strong presumption: (1) when a statute precludes judicial review; and (2) when an agency action is committed to agency discretion by law. *Id*.; *see also* 5 U.S.C. § 701(a)(1)-(2) ("§ 701(a)(1)" and "§ 701(a)(2)"). In this case, defendant invokes both exceptions. (ECF No. 18 at 10-19.)

### 1.        Statutory Preclusion

In the absence of an express statutory prohibition, "an agency bears a heavy burden in overcoming the presumption that Congress did not mean to prohibit all judicial review." *Thomas Brooks Chartered v. Burnett*, 920 F.2d 634, 641 (10th Cir. 1990). In that regard, statutory preclusion can be determined from "the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345, 104 S.Ct. 2450 (1984). Thus, a court first determines whether the statute precluded all judicial review, and, if not, "whether Congress nevertheless foreclosed review to the class to which the [plaintiff] belong[s]." *Id*. at 345-346 (alterations omitted).

Defendant does not argue that the statute at issue here—the Federal Credit Union Act ("the FCUA"), 12 U.S.C. §§ 1751, *et seq.*—expressly precludes any class of entities from seeking judicial review. (*See* ECF No. 18 at 11.) Rather, defendant argues that judicial review of plaintiff's claims

is "impliedly precluded" due to the statute's language, structure, and legislative history. (*Id*.)  As

a result, defendant bears the heavy burden of showing that the FCUA impliedly precludes judicial

review of plaintiff's claims. *See Thomas Brooks*, 920 F.2d at 641.  Defendant has failed to meet that

burden here.

Defendant argues that Congress' implied intention to preclude judicial review can be

discerned from, first, the explicit provision in the FCUA for judicial review of NCUA decisions

affecting insured credit unions.  (ECF No. 18 at 11-12.)  The mere fact that the FCUA provides a

framework for judicial review of decisions affecting insured credit unions does not overcome the

APA's strong presumption in favor of judicial review of agency actions.  This could just as easily

imply that Congress wanted to establish a specific framework for review of insured credit union

decisions, while leaving review of yet-to-be insured credit unions to the vagaries of already existing

law.  This is understandable given that, once insured, Congress built in various pre-judicial hoops

and notice requirements through which the NCUA had to jump before a credit union's insured status

could be terminated.  *See* 12 U.S.C. § 1786(b).

In addition, defendant misconstrues *Block*.  Defendant, quoting *Block*, asserts that, "when a

statute provides a detailed mechanism for judicial consideration of particular issues at the behest of

particular persons, judicial review of those issues at the behest of other persons may be found to be

impliedly precluded." (ECF No. 18 at 11.)  Defendant ignores, however, that this passage does not

apply here because, as defendant acknowledges, there is no statutory mechanism for yet-to-be

insured credit unions to seek judicial review of decisions affecting them.  Thus, this is not a case

where Congress has assigned the "behest[ing]" to a particular class of persons because no class has

been so ordained.

Defendant next argues that Congress' intent can be inferred from the FCUA's legislative history. (ECF No. 18 at 12-14.) As an initial matter, defendant cites to no legislative history expressly stating that Congress sought to preclude judicial review of decisions affecting yet-to-be insured credit unions. (*See id*.) Defendant again relies upon implications. To the extent implication from legislative history can overcome the strong presumption in favor of judicial review, *see Block*, 467 U.S. at 349 (stating that the presumption can be overcome by "specific legislative history that is a reliable indicator of congressional intent"), the legislative history to which defendant cites is insufficient.

Defendant explains that the FCUA originally provided consequences for a disapproved application for insurance;[2] namely, a one-year period for an aspiring credit union to meet the requirements for insurance. (ECF No. 18 at 12.) As defendant contends, these "consequences" did not include judicial review. (*Id*.) Again, however, defendant reads too much into the statute's silence; merely because judicial review was not mentioned does not mean that it was precluded, given the strong presumption in favor of such review. This is especially so with respect to the provision that defendant cites, given that, if an aspiring credit union did not meet the insurance requirements, its charter could be suspended or revoked. Although, like much of the FCUA in this regard, there is no indication that Congress so intended, the Court finds it hard to believe that Congress intended to allow the NCUA to suspend or revoke a credit union's charter without any judicial review of the same. Rather, as defendant asserts, Congress considered the provision "a strong incentive for unqualified credit unions to become qualified without risking the reserves of the fund." (*See id*. at 13 (quotation omitted)).

---

[2] The Court notes that the provision to which defendant cites pertains only to *federal* credit unions; not state-chartered credit unions like plaintiff. Thus, it is far from clear that this provision is relevant to the Court's analysis. Nonetheless, the Court will consider it as if it is.

5

The same is true of plaintiff's reliance upon a revision to the above provision.  In that revision, defendant explains that Congress amended the FCUA to provide, in the event of an insurance application being denied, for a two-year period of insurance during which the applicant was required to obtain an approved application.  (*Id*. at 13.)  The revised provision also required the NCUA to provide technical assistance to a disapproved applicant in order to assist it in meeting the insurance standards.  (*Id*.)  Again, the statute was silent as to judicial review, but, for the same reasons discussed *supra*, this does not mean that judicial review was precluded.  Rather, like the previous iteration of the provision, its purpose was to act as an incentive, with the incentive slightly adjusted in order to "enable the maximum number of such credit unions to meet the standards for insurance …."  (*See id*.)

As far as the Court is concerned this state of play is only confirmed by the fact that Congress subsequently amended the FCUA to completely remove the incentive provision from the statute.  For whatever reason, Congress presumably either no longer believed it necessary or no longer desired to incentivize credit unions to aspire to insured status.  That, however, does not mean that Congress also intended for such credit unions to have no avenue for judicial review of their denied applications, especially when there is no indication of that intent other than reading between the lines of Congress' revisions of a solitary statutory provision.  Ultimately, Congress' intent may have been as defendant suggests, but there is nothing "fairly discernable" from the statute indicating that.  *See Block*, 467 U.S. at 350-351.  Instead, there is only doubt.  *See id*. at 351.

As a result, the Court finds that § 701(a)(1) does not foreclose judicial review here.

### 2.    Agency Discretion

Section 701(a)(2) applies when a "statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  *Heckler v. Chaney*, 470 U.S.

821, 830, 105 S.Ct. 1649 (1985).  This, however, is a "very narrow" exception to the APA's presumption in favor of judicial review, applying only when "statutes are drawn in such broad terms that in a given case there is no law to apply."  *McAlpine*, 112 F.3d at 1433.  The "law to apply" focuses not only upon the pertinent statute, but also on agency regulations when the agency is acting pursuant to those regulations.  *Id*.  In addition, "[t]he failure of an agency to follow its own regulations is challengeable under the APA."  *Thomas Brooks*, 920 F.2d at 642.

In *Heckler*, the Supreme Court held that an agency's decision not to act was an example of a decision committed to the agency's discretion when Congress had not indicated that the agency must act in the manner desired.  470 U.S. at 835-838.  In *Thomas Brooks*, the Tenth Circuit Court of Appeals concluded that an agency decision was reviewable because the decision had relied upon regulations setting forth objective criteria.  920 F.2d at 643.  In *McAlpine*, the Tenth Circuit concluded that an agency decision was reviewable due to the agency's regulations that provided seven factors for the agency to consider in evaluating requests for the acquisition of land in trust sales.  112 F.3d at 1434.  Although the regulations did not provide guidance on how the factors should be balanced or weighed, they set forth objective criteria that the Tenth Circuit concluded was reviewable.  *Id*.  The Tenth Circuit further explained that the "touchstone" of its review of the agency's action was to determine "only whether the decision was based on a consideration of the relevant factors."  *Id*. (quotation omitted).

The Court finds the reasoning and facts of *McAlpine* to be applicable here.  As defendant acknowledges, the FCUA sets forth criteria that the NCUA must consider before approving an application for insurance.  (ECF No. 18 at 15 (quoting 12 U.S.C. § 1781(c)(1))).  Specifically, the criteria set forth in the FCUA are: (1) the history, financial condition, and management policies of

the applicant; (2) the economic advisability of insuring the applicant without undue risk to the insurance fund; (3) the general character and fitness of the applicant's management; (4) the convenience and needs of the applicant's members; and (5) whether the applicant is a cooperative association organized to promote thrift among its members and create a source of credit for provident or productive purposes. 12 U.S.C. § 1781(c)(1). These five criteria are supplemented by federal regulations pertaining to requirements for credit union insurance. *See* 12 C.F.R. § 741.3(b).

Just as in *McAlpine*, these criteria are sufficiently objective for judicial review. As defendant acknowledges, the federal regulations provide applicants with "more guidance" on the meaning of the criteria and the factors the NCUA will consider in determining whether the criteria have been met. (*See* ECF No. 18 at 17.) The fact that neither the FCUA nor the federal regulations set forth how the criteria should be balanced or weighed does not obviate the fact that the criteria are objective, or that this Court is able to assess whether the NCUA has considered each of the factors. *See McAlpine*, 112 F.3d at 1434.

The Court also does not agree that the criteria involve matters "peculiarly" within the NCUA's expertise. (*See* ECF No. 18 at 17 (quotation omitted)). As an initial matter, the quoted passage from *Heckler* is misconstrued, as the Supreme Court noted that an agency's decision not to enforce a statute was "peculiarly within [the agency's] expertise," as it involved an assessment of whether the agency's resources were best spent on enforcement, whether the agency would succeed, whether enforcement best fits the agency's policies, and whether the agency has enough resources to undertake the action. *Heckler*, 470 U.S. at 831. Consideration and application of the criteria set forth in the FCUA is a conceptually different matter than an agency's determination not to enforce a statute; most notably because the former does not involve matters about the agency itself. In

addition, assessing the history, financial condition, and management policies of an applicant, or the character and fitness of the applicant's management, or the needs of an applicant's members, or whether an applicant's purpose is the promotion of thrift, or whether an applicant poses an undue risk to the NCUA's insurance fund, are not matters that require peculiar knowledge. They can be assessed based upon objective facts. Moreover, to the extent that defendant relies upon *Hammond v. Comptroller of Currency*, 878 F. Supp. 1438 (D. Kan. 1995), for the proposition that, because the terms of the criteria are not expressly defined, they are unreviewable and would require this Court to substitute its own judgment in place of the NCUA's, defendant ignores the review that takes place of agency decisions. As the Tenth Circuit explained in *McAlpine* the "touchstone" of that review is whether the agency's decision was based upon a consideration of the relevant factors. *See McAlpine*, 112 F.3d at 1434.

Finally, in the Complaint, plaintiff alleges that defendant failed to follow its own regulations. Notably, plaintiff alleges that, in violation of 12 C.F.R. § 741.3(f), defendant failed to provide a letter of disapproval: stating the reasons why plaintiff's application was disapproved; citing authority for the NCUA's decision; or providing suggested methods by which plaintiff could correct its deficiencies. (ECF No. 1 at ¶ 113.) Plaintiff further alleges that defendant violated 12 U.S.C. § 1781(c) because its letter of disapproval did not represent the formal action of the NCUA's Board. (*Id*. at ¶¶ 90, 94.) Because allegations that an agency did not follow its regulations are reviewable under the APA, *Thomas Brooks*, 920 F.2d at 642, these allegations are also reviewable.

As a result, the Court finds that § 701(a)(2) does not foreclose judicial review here.[3]

---

[3] Defendant also refers to a prior version of the FCUA, explaining that between 1971 and 1977 the FCUA provided that applications from state-chartered credit unions must be approved under certain circumstances. (ECF No. 18 at 16.) First, defendant cites no authority that this Court should consider prior versions of a statute when considering, for purposes of § 701(a)(2), if a decision is committed to an

### B.       Due Process

Defendant also moves for dismissal of plaintiff's due process claim, arguing that plaintiff has failed to allege either a property or liberty interest at stake.  (ECF No. 18 at 19-21.)  Specifically, defendant argues that plaintiff does not enjoy a right to participate in the NCUA's insurance fund because the decision on whether plaintiff may participate in that fund is in the NCUA's discretion.  (*Id*.)  Defendant further argues that plaintiff failed to allege a liberty interest in the Complaint.  (*Id*. at 20 n.3.)  Plaintiff responds that it does have a property interest in the insurance fund because the NCUA does not have "uncontrolled discretion" to reject its application, and its application can only be rejected if it is too grave a risk to the fund.  (ECF No. 21 at 14-15.)  Plaintiff also contends that a liberty interest is at stake because the NCUA's denial of its application may "seriously damage [plaintiff's] standing and associations in the community" and "potentially foreclose[] [plaintiff's] freedom to take advantage of other economic opportunities."  (*Id*. at 15-16.)

With respect to any liberty interest in this case, the Court agrees with defendant that plaintiff did not allege any such interest in its Complaint.  Instead, in the Complaint, plaintiff's due process claim is entirely predicated upon plaintiff having an alleged property interest.  (*See* ECF No. 1 at ¶¶ 85, 101 ("[Plaintiff] enjoys a *property interest* in obtaining the right to participate in the [NCUA's insurance fund].") (emphasis added)).  As far as the Court can discern, the phrase "liberty interest" is not used once in the Complaint, and any mention of liberty is plainly lacking from plaintiff's "Prayer for Relief" with respect to this claim.  (*See id*. at 73.)  Moreover, plaintiff's attempt to color, in the light of liberty, its assertion (in the conclusion section of the Complaint) that defendant's

---

agency's discretion.  Second, even if the Court did consider the prior version to which defendant refers, it provides no help in discerning whether the decision to approve a state-chartered credit union's insurance application is committed to the discretion of the NCUA.

disapproval letter constituted an attempt to injure plaintiff's ability to obtain private insurance is, at best, post-facto opportunism. (*See* ECF No. 21 at 16 n.17.)  In any event, even if the Court was prepared to construe this as an attempt to amend the Complaint (which the Court does not), plaintiff's vague assertions of "potential[]" harm, the loss of undisclosed economic opportunities, and damage to its good name are insufficient to raise this claim to the level of plausibility.  *See Twombly*, 550 U.S. at 555-556.

With respect to plaintiff's alleged property interest, the Court also agrees with defendant. As plaintiff acknowledges, to establish a property interest in a government benefit, plaintiff must show a "legitimate claim of entitlement" to the benefit. (ECF No. 21 at 13 (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701 (1972)).  This is in contrast to "an abstract need or desire" for the benefit or an "unilateral expectation" to it. (*Id.*)  Generally, a claim of entitlement is based upon statutory or contractual provisions, but it may also be predicated upon rules or mutually explicit understandings. *Curtis Ambulance of Florida, Inc. v. Bd. of Cnty. Comm'rs of Shawnee Cnty., Kansas*, 811 F.2d 1371, 1375-76 (10th Cir. 1987).  Here, plaintiff bases its property interest upon the FCUA. (ECF No. 21 at 14-15.)

Contrary to plaintiff's contention, however, the FCUA provides no legitimate claim of entitlement to participation in the NCUA's insurance fund, at least not to state-chartered credit unions.  First, merely because the FCUA mandates certain criteria that the NCUA must consider before approving an insurance application does not mean that plaintiff is entitled to participate in the insurance fund.  At most, this means that plaintiff is entitled to have the NCUA consider the criteria listed in the statute.[4]  Notably, nowhere in the FCUA does it state that, if an applicant satisfies each

---

[4] Even if this could be characterized as an entitlement for due process purposes, it would not help plaintiff because "an entitlement to nothing but procedure cannot be the basis for a property interest." *See Teigen v. Renfrow*, 511 F.3d 1072, 1081 (10th Cir. 2007) (quotation omitted).

of the criteria, the NCUA must approve the applicant for insurance.  Rather, the FCUA expressly

provides that the NCUA *may* insure a state-chartered credit union.  12 U.S.C. § 1781(a).  Thus, even

though the NCUA's *consideration* of an insurance application is not uncontrolled, this fact has no

bearing on whether plaintiff has a legitimate entitlement in obtaining insurance.[5]  Nor does the fact

that the NCUA must disapprove an applicant under certain circumstances infer that the converse

must occur if none of those circumstances exist.  If Congress wanted that to be the case, it could have

easily so provided.

Second, plaintiff's constructions of the FCUA are inaccurate.  Plaintiff asserts that an

insurance application may *only* be rejected if the applicant "is too grave a risk under the terms of the

[FCUA]."  (ECF No. 21 at 15.)  Plaintiff further asserts that, if grounds for rejecting an application

are not found, the applicant "should qualify" for insurance.  (*Id.*)  Plaintiff quotes *Flood v. Veghts*,

878 F. Supp. 1083 (N.D. Ill. 1995), to support these assertions.  This Court simply disagrees with

the *Flood* court's interpretation of the FCUA.  Nowhere in the FCUA does it state that the NCUA

may *only* reject an insurance application if the applicant is a grave risk.  Instead, the FCUA provides

*five* grounds upon which the NCUA shall disapprove an insurance application; one of which is if the

applicant would pose an undue risk to the insurance fund.  *See* 12 U.S.C. § 1781(c)(2).  Moreover,

the term *only* is not used in this provision.

Similarly, the FCUA does not provide that an applicant *should* qualify for insurance if

grounds for disapproving an application do not exist under § 1781(c)(2).  This is simply grafting

---

[5] Plaintiff cites *Salinas Valley Cmty. Fed. Credit Union v. Nat'l Credit Union Admin.*, 564 F. Supp. 701 (N.D. Cal. 1983), as support.  *Salinas Valley*, however, is entirely incompatible with the facts here because in that case the credit union was already insured and federally chartered when the NCUA attempted to irrevocably revoke its charter.  *See id.* at 703-704.  It was the credit union's right to *continued existence* that the court assumed, without deciding, constituted a property interest, not the credit union's opportunity to participate in the NCUA's insurance fund.  *See id.* at 705-706.

words onto the statute that do not exist.  The *Flood* court's use of the inconclusive word "should"

belies as much, as the court could not say "must" or "shall" because that is simply not what the

statute provides.  Put simply, whether or not this Court believes that an applicant should qualify for

insurance because it does not present any of the automatic disqualifiers in § 1781(c)(2) is irrelevant

to whether plaintiff has a legitimate entitlement to insurance.  Rather, this Court must determine

whether "the statutes or regulations in question establish a framework of factual conditions

delimiting entitlements which are capable of being explored at a due process hearing."  *Painter v.*

*Shalala*, 97 F.3d 1351, 1357 (10th Cir. 1996) (quotation omitted).

As discussed *supra*, the FCUA certainly sets forth factual criteria relevant to an application

for insurance.  *See* 12 U.S.C. § 1781(c)(1).  However, those criteria do not *delimit* or fix plaintiff's

entitlement to insurance.  Section 1781(c)(1) merely states that the NCUA must *consider* the factual

criteria; at no point does the provision state or suggest that, if the criteria are met, then the NCUA

must approve an insurance application or that an applicant is eligible for insurance.  Thus, contrary

to plaintiff's contention, § 1781(c)(1)'s factual criteria do not constitute "eligibility rules." (*See* ECF

No. 21 at 15.)  In this light, plaintiff could not have a legitimate entitlement to federal credit union

insurance because, even if it legitimately believed that it had met the factual criteria set forth in the

FCUA, the NCUA was not required to approve its application.[6]

---

[6] It is important to note that there is a fundamental difference between (1) the Court's finding *supra* that, for purposes of judicial review under the APA, the decision to reject plaintiff's insurance application is not committed to the NCUA's discretion, and (2) the Court's instant finding that, for purposes of whether plaintiff has a due process property interest in credit union insurance, the NCUA's approval of an insurance application is not delimited.  In the first instance, the relevant inquiry is directed to whether there are *objective criteria* by which to review the NCUA's decision disapproving plaintiff's insurance application, which there are.  In the second instance, the relevant inquiry is to whether plaintiff has a *legitimate entitlement* to federal credit union insurance, which it does not.

13

### C.     Standing

Defendant argues that plaintiff lacks constitutional standing for purposes of seeking declaratory relief in this case because, even if this Court ruled in plaintiff's favor, any relief awarded could not remedy plaintiff's alleged injury. (ECF No. 18 at 8-10.) More specifically, defendant asserts that plaintiff seeks declaratory relief that the NCUA is able to insure credit unions serving marijuana-related businesses, and that plaintiff is eligible to apply for federal credit union insurance. (*Id*. at 8-9.) Defendant asserts that any declaratory relief this Court could provide in this regard would not redress plaintiff's alleged injury because plaintiff's application for insurance was not denied due to defendant believing that it was not permitted to insure credit unions serving marijuana-related businesses or due to defendant believing that plaintiff was not eligible for insurance. (*Id*. at 9.)

In response, plaintiff does not challenge defendant's standing argument. Instead, plaintiff argues that defendant has admitted that the NCUA is not "categorically precluded" from insuring credit unions serving marijuana-related businesses, and that plaintiff's application for insurance was not denied due to it being ineligible for federal credit union insurance. (ECF No. 21 at 7.) Plaintiff argues that defendant's statements should be treated as judicial admissions, and, because of those admissions, the declaratory relief that it sought in the Complaint is now moot. (*Id*. at 7-8.)

First, as defendant asserts in its reply, plaintiff failed to provide any counter argument with respect to whether it has standing for purposes of the declaratory relief that it sought in the Complaint. (*See* ECF No. 22 at 12.) As such, plaintiff has either waived its requests for declaratory relief (Claims 17 and 18), or has failed to satisfy its burden of establishing this Court's subject matter jurisdiction over them. *See Smith*, 643 F. Supp. 2d at 1289; *Steak n Shake Enters., Inc. v. Globex*

*Co., LLC*, 110 F. Supp. 3d 1057 (D. Colo. 2015) (RM) (finding an argument not addressed in a party's response was waived).

Second, whether or not defendant has admitted any facts in its response, those alleged admissions are irrelevant to the Court's analysis of the motion to dismiss. Therefore, the Court rejects plaintiff's suggestion that the Court deem any statements in the response as judicial admissions. The Court notes, however, that, with respect to the alleged admission that the NCUA was not categorically precluded from insuring credit unions serving marijuana-related business, defendant did not make this statement. Instead, defendant asserted that *plaintiff's Complaint* did not allege that the NCUA was categorically precluded from insuring credit union's serving marijuana-related businesses. (ECF No. 18 at 9 n.1.) Plaintiff also stretches defendant's statement—that plaintiff's insurance application was not denied because the NCUA believed that plaintiff was ineligible for federal credit union insurance—too far. Contrary to plaintiff's suggestion, this statement does not mean that "a state-chartered credit union that proposes to serve [marijuana-related businesses] as a component of its membership is eligible to apply for federal deposit insurance." (*See* ECF No. 21 at 7 n.13.) Plaintiff cannot convert defendant's statement about plaintiff into a general statement about all state-chartered credit unions serving marijuana-related businesses.

## III.   Conclusion

For the reasons discussed herein, the Court GRANTS in part and DENIES in part the motion to dismiss (ECF No. 18) as follows:

(1)   Claim 1, to the extent that it raises a claim under the Due Process Clause, is DISMISSED;

(2)   Claims 17 and 18 for declaratory relief are DISMISSED; and

(3)     Plaintiff's remaining claims (Claims 2 through 16, as well as Claim 1 to the extent

that it is brought under the APA) shall proceed.

**SO ORDERED.**

DATED this 5th day of July, 2016.


BY THE COURT:

RAYMOND P. MOORE
United States District Judge

16