**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-CV-01634-RM

THE FOURTH CORNER CREDIT UNION, a Colorado state-chartered credit union,

    Plaintiff,

v.

NATIONAL CREDIT UNION ADMINISTRATION,

    Defendant.

---

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

---

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the National Credit Union Administration ("NCUA" or "Defendant"), by and through undersigned counsel, respectfully moves for Judgment on the Pleadings based on lack of subject matter jurisdiction, as the controversy that gave rise to this lawsuit is now moot.

Pursuant to the District of Colorado's Local Civil Rule 7.1, Defendant has conferred with opposing counsel to resolve the underlying dispute. Defendant sent letters to opposing counsel on July 27, 2017, November 28, 2017, December 6, 2017, and February 9, 2018 explaining Defendant's position that this case is moot, and asking Plaintiff to voluntarily dismiss the case. Defendant also conferred with opposing counsel by phone on February 12, 2018. Despite its good faith efforts, Defendant was unable to resolve the disputed matter.

## INTRODUCTION

Plaintiff is a Colorado state-chartered credit union that, at its inception, intended to provide banking services to state-licensed marijuana businesses. Defendant is an independent executive agency whose functions include processing applications for and providing federal deposit share insurance to credit unions. After reviewing and considering Plaintiff's application for such insurance, Defendant denied the application, and Plaintiff filed this lawsuit. At the time Plaintiff submitted its application for insurance and filed its Complaint, Plaintiff was focused on providing banking services to state-licensed cannabis and hemp businesses, among others. Recently, however, Plaintiff materially changed its business plan, as averred in court filings in another case in this District. Because Plaintiff has repeatedly stated in court filings that it no longer intends to serve marijuana-related businesses unless it becomes lawful to do so under federal law, Plaintiff's application for insurance and Defendant's denial of the same no longer present a live case or controversy. Accordingly, this court lacks subject matter jurisdiction over Plaintiff's claims and must dismiss this case as moot.

## BACKGROUND

**I.   THE FEDERAL CREDIT UNTION ACT AND THE NATIONAL CREDIT UNION ADMINISTRATION**

In 1934, Congress enacted the Federal Credit Union Act ("FCUA"), 12 U.S.C. §§ 1751 (2012), *et seq.*, which authorized the chartering and incorporation of federal credit unions. *NCUA v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 483 (1998). The statute was designed to provide for federal "supervision of a credit union system which w[ould] make credit for provident and productive purposes more available to people of small means" and "thereby help[] to stabilize the credit structure of the United States[.]" H.R. Rep. No. 73-2021, at 1 (1934); *see also* 12 U.S.C.

§ 1766(f)(1) (2006) (empowering the NCUA to investigate the "problems of persons of small means in obtaining credit at reasonable rates of interest" and the methods and benefits of cooperative saving and lending among such persons).

In 1970, Congress established the NCUA as an independent agency within the executive branch of the federal government. Pub. L. No. 91-206, § 3(a), 84 Stat. 49, 49–50 (codified as amended at 12 U.S.C. § 1752a(a)) (2006). The NCUA is under the management of the NCUA Board, which oversees the agency and which has the power to prescribe rules and regulations, appoint liquidating agents for involuntary liquidation of federal credit unions, and delegate its own authority. 12 U.S.C. § 1752a; 12 U.S.C. § 1766.

The FCUA also created in the U.S. Treasury the National Credit Union Share Insurance Fund ("NCUSIF"), to be managed by the NCUA. 12 U.S.C. § 1783(a) (2009). Congress noted it was "particularly important" that credit union members "enjoy the same insurance protection enjoyed by other savers and depositors" because "many credit unions deal primarily with individuals having limited incomes." S. Rep. No. 91-1140, at 2 (1970). However, "provid[ing] insurance to credit unions whose capital was impaired or whose financial policies or condition were found to be unsafe or unsound . . . [would] unduly jeopardize[e] the insurance fund and possibly increas[e] the financial burden placed on all other credit unions." *Id*. at 5. The NCUSIF insures members' deposits at insured credit unions—up to $250,000 of protection per share owner at an insured credit union. 12 U.S.C. § 1787(k)(3) (2014). If a federally insured credit union fails and becomes insolvent, the NCUA is authorized to liquidate its assets and draw upon the NCUSIF in amounts necessary to pay off all insured shares of members' deposits. 12 U.S.C. § 1787.

The NCUA may insure the accounts of state-chartered credit unions that apply and qualify for insurance coverage under the statute. 12 U.S.C. § 1781(a) (2006). Applications for such insurance "shall be in such form as the Board shall provide" and must contain an agreement by the applicant to abide by certain statutory requirements. 12 U.S.C. § 1781(b). In evaluating such applications, the NCUA is required to consider (i) "the history, financial condition, and management policies of the applicant," (ii) "the economic advisability of insuring the applicant without undue risk" of the NCUSIF, (iii) "the general character and fitness of the applicant's management," (iv) "the convenience and needs of the members to be served by the applicant," and (v) "whether the applicant is a cooperative association organized for the purpose of promoting thrift among its members and creating a source of credit for provident or productive purposes" before approving any application for federal share insurance. 12 U.S.C. § 1781(c)(1). The FCUA provides that the NCUA "shall disapprove the application of any credit union for insurance of its member accounts if it finds [(i)] that its reserves are inadequate, [(ii)] that its financial condition and policies are unsafe or unsound, [(iii)] that its management is unfit, [(iv)] that insurance of its member accounts would otherwise involve undue risk to the fund, or [(v)] that its powers and purposes are inconsistent with the promotion of thrift among its members and the creation of a source of credit for provident or productive purposes." 12 U.S.C. § 1781(c)(2).

## II.   THIS LITIGATION

This case stems from Plaintiff the Fourth Corner Credit Union's ("Plaintiff" or "TFFCU") September 2014 application for federal share deposit insurance from the NCUA. *See* Pls.' Compl. ¶ 1, ECF No. 1. Plaintiff's application was consistent with its stated intention to "provide banking services to complaint state licensed cannabis and hemp businesses." Compl. ¶ 2; *see also* Index to

4

the Administrative Record, Tab 6 at 00259, ECF No. 57-2.[1] NCUA denied Plaintiff's application in July 2015, and this challenge followed. Pls.' Compl. ¶ 72.

In July 2016, this court granted in part and denied in part Defendant's Motion to Dismiss, finding that Plaintiff had standing to challenge NCUA's decision under the Administrative Procedure Act ("APA"), but dismissing Plaintiff's claims under the Due Process Clause and for declaratory relief. Opinion and Order, ECF No. 23. After some litigation concerning the scope of the Administrative Record, Defendant filed the final administrative record on December 8, 2016. Notice of Lodging of the Completed Administrative Record, ECF No. 57. Since that time, there has been no formal activity in this case. In December 2016, Defendant proposed a schedule for briefing motions for summary judgment in this case, and Plaintiff declined to respond.[2] As noted above, since July 2017, Defendant has repeatedly corresponded with Plaintiff in an attempt to obtain dismissal of this case on mootness grounds without the need for motions practice. Because Plaintiff has declined to dismiss this case voluntarily, Defendant now moves for judgment on the pleadings as the Court lacks subject matter jurisdiction over this case.

## III. PARALLEL LITIGATION AGAINST THE FEDERAL RESERVE BANK OF KANSAS CITY

At the same time that Plaintiff filed the complaint at issue in this case, it also filed a complaint against the Federal Reserve Bank of Kansas City ("FRB-KC"), alleging that FRB-KC improperly denied Plaintiff's application for a master account. Complaint, ECF No. 1, Case No.

---

[1] Plaintiff's application contains a more fulsome explanation of its proposed field of membership. However, pursuant to the court's order granting the parties' motion to restrict portions of the administrative record, ECF No. 37, Defendant has not quoted from or attached the relevant portion in this brief. The full record is available to the court in the Clerk's office. *See* ECF No. 58.

[2] Accordingly, the parties have not yet filed a Joint Case Management Plan.

1:15-cv-01633 (D. Colo.). Plaintiff's original complaint in that case reaffirmed that, as stated in its NCUA application, the credit union intended to "provide banking services to compliant state licensed cannabis and hemp businesses" and their employees. *Id.* at ¶ 2. The case was eventually dismissed without prejudice pursuant to an order of the Tenth Circuit Court of Appeals, *see* ECF No. 61, Case No. 1:15-cv-01633 (D. Colo.), and Plaintiff filed a new complaint in district court, *see* ECF No. 1, Case No. 1:17-cv-02361 (D. Colo.) ("Exhibit A").

In the new complaint, filed in September 2017, Plaintiff repeatedly averred that it will not serve marijuana-related businesses, reflecting a massive change in the credit union's plan for membership. *Id.* at ¶¶ 1, 41, 45-48. In particular, Plaintiff stated that its Board passed a resolution promising that "the Fourth Corner Credit Union shall not serve-marijuana related businesses until there is a change in federal law that authorizes financial institutions to serve marijuana-related businesses." *Id.* at ¶ 41. Instead, Plaintiff will "pursue its broader mission of servicing supporters of legalization." *Id.* at ¶ 43. Plaintiff recently settled the case with FRB-KC, and voluntarily dismissed the complaint. Stipulation of Dismissal of Case, ECF No. 28, No. 1:17-cv-2361 (D. Colo., filed Feb. 2, 2018). Indeed, Plaintiff has filed in the instant case a letter from FRB-KC to Plaintiff indicating that Plaintiff's bylaws now "prohibit[] TFCCU from providing services to [marijuana-related businesses ("MRBs")] unless and until it becomes lawful under federal law to provide banking or financial services to MRBs. . . ." ECF No. 63-2 at 2.

## LEGAL STANDARD

"Subject-matter jurisdiction defines the court's authority to hear a given type of case." *U.S. v. Morton*, 467 U.S. 822, 828 (1984). "And because parties cannot waive subject-matter jurisdiction, they can challenge it 'at any time prior to final judgment.'" *City of Albuquerque v.*

*Soto Enterprises, Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017). When, as here, the pleadings are closed, a challenge to subject matter jurisdiction is properly brought as a motion for judgment on the pleadings pursuant to Federal Rule Civil Procedure 12(c). *See, e.g.*, *Swepi, LP v. Mora County, N.M.*, 81 F. Supp. 3d 1075, 1146 (D.N.M. 2015); *Ponca Tribe of Indians of Okla. v. Continental Carbon Co.*, 439 F. Supp. 2d 1171, 1173 (W.D. Okla. 2006). Rule 12(c) motions challenging subject matter jurisdiction are evaluated under the same standard as Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction. *See Swepi*, 81 F. Supp. 3d at 1146 (citing 5C Charles Alan Wright & Arthur AR. Miller, Federal Practice and Procedure § 1367 (3d ed. 2017) ("[I]f a party raises an issue as to the court's subject matter jurisdiction on a motion for a judgement on the pleadings, the district judge will treat the motion as if it had been brought under Rule 12(b)(1).")).

"Federal subject matter jurisdiction is elemental, and must be established in every cause under review in the federal courts." *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (internal citations and quotations omitted). The burden of establishing subject matter jurisdiction falls on the party asserting jurisdiction. *Id.* In a Rule 12(b)(1) challenge to subject matter jurisdiction, "a party may go beyond allegations contained in the complaint and challenge the facts on which subject matter jurisdiction depends." *Triad Bank v. First-Citizens Bank & Trust Co.*, 85 F. Supp. 3d 1258, 1271 (D. Colo. 2015) (quoting *Holt v. U.S.*, 46 F.3d 1000, 1003 (10th Cir. 1995)). Without converting the motion to one for summary judgment, the Court has "wide discretion" to permit the inclusion of "affidavits" and "other documents." *Id.* (quoting *Holt*, 46 F.3d at 1003).

## ARGUMENT

Plaintiff's decision to change its field of membership to no longer serve marijuana-related businesses supersedes its application for federal share deposit insurance and the NCUA's resulting decision, rendering this case moot. The doctrine of mootness originates in the constitutional requirement that, "[u]nder Article III of the Constitution, federal courts may only adjudicate actual, ongoing cases or controversies." *R.M. Inv. Co. v. U.S. Forest Serv.*, 511 F.3d 1103, 1106-07 (10th Cir. 2007) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)). This requirement "subsists through all stages of federal judicial proceedings. . . ." *Schell v. OXY USA Inc.*, 814 F.3d 1107, 1114 (10th Cir. 2016) (internal quotation omitted)." "Thus, even where litigation poses a live controversy when filed, the doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative change of affecting them in the future." *Id.*; *see also R.M. Inv. Co.*, 511 F.3d at 1107 ("[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.").

In determining whether there is an ongoing controversy, the court must ask the "crucial question" of "whether granting a present determination of the issues will have some effect in the real world." *McKeen v. U.S. Forest Serv.*, 615 F.3d 1244, 1255 (10th Cir. 2010) (internal citations omitted). This effect "must be on the legal relationship between the parties to the case" and "the prospect of deterring future harm by the defendant" is not sufficient to "overcome mootness." *R.M. Inv. Co. v. U.S. Forest Serv.*, 511 F.3d 1103, 1108 (10th Cir. 2007). If a case is moot, the court lacks subject matter jurisdiction, and must dismiss the action. *See Browne v. City of Grand*

*Junction Colorado*, 85 F.Supp.3d 1249, 1255, 1258 (D. Colo. 2015) (citing *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010)).

The Tenth Circuit has dismissed cases for lack of jurisdiction in closely analogous circumstances. For example, in *McKeen*, the court considered an individual plaintiff's challenge to the Forest Service's decisions relating to a grazing permit issued in 2002. 615 F.3d at 1252. But in 2004, two years after the issuance of the permit at issue in the case, McKeen voluntarily agreed to the terms of a new grazing permit. *Id.* at 1255. Thus, as the court noted, "the declaratory relief which McKeen [sought] relate[d] only to a now superseded permit." *Id.* Rejecting McKeen's argument that the court should review the 2002 permit to determine whether the 2004 permit was unlawful, the court determined that review of the 2004 agreement was premature before an administrative appeal of that decision. *Id.* As the court had "no power to set aside the [2004] grazing permit," it concluded that any declaration regarding the 2002 decision "would be of no effect in the real world," and that the case was moot. *Id.* at 1256.

Plaintiff here likewise asks this court to review an agency's decision over a now-superseded set of facts. Plaintiff asks the court to determine whether NCUA acted arbitrarily and capriciously in denying its 2015 application for insurance covering a credit union that serves "state licensed cannabis and hemp businesses." Pls.' Compl. ¶ 2; *see also* Index to the Administrative Record, Tab 6 at 00259, ECF No. 57-2 (available to the court at the Clerk's office). But, as in *McKeen*, Plaintiff voluntarily agreed to a new set of conditions for its business, repeatedly averring in court that it will not serve these marijuana-related businesses. Plaintiff's Board has gone so far as to memorialize this decision in a Board Resolution. A determination related to the NCUA's decision over a materially different credit union application will not have any "effect in the real

9

world," and thus the court lacks subject matter jurisdiction over this case. *McKeen*, 615 F.3d at 1256.

Plaintiff may, of course, file a new application for federal deposit share insurance with the NCUA, and the NCUA will consider any such application pursuant to the criteria set forth in 12 U.S.C. § 1781. For example, the NCUA would consider anew whether insuring Plaintiff is "economic[ally] advisab[le]" without "undue risk" and whether its "financial condition" is "unsafe or unsound." *Id.* at § 1781(b)(2), (c)(2). As with Plaintiff's original application, the NCUA's consideration process will culminate in the issuance of a letter either granting or denying Plaintiff's new application.

The "speculative possibility" of a future dispute that may arise out of a NCUA decision on a new application by Plaintiff, however, does not confer subject matter jurisdiction over Plaintiff's present claims. *See Front Range Equine Rescue v. Vilsack*, 782 F.3d 565, 569 (10th Cir. 2015) (The "speculative possibility of a future controversy does not provide [a court] with Article III jurisdiction."). Plaintiff cannot manufacture a present controversy by speculating about how the NCUA will evaluate a new application. The Tenth Circuit's decision in *Front Range* is instructive on this point. In that case, an animal advocacy group brought an action alleging that the Food Safety Inspection Service's decision to issue a grant of inspection services for slaughter and processing of equines violated the National Environmental Policy Act. *Id.* at 567. During the pendency of the case, Congress prohibited funding for such inspection services and the company who was granted a permit voluntarily surrendered it. *Id.* at 568. The advocacy group argued that the case was not moot because, if Congress removed the ban on funding and the company applied for a new permit, the Food Safety Inspection Service may rely on some of its original determination

in processing the new application. *Id.* at 569. The court squarely rejected this argument, concluding that, even if "the former grant could have some future influence on the agency's consideration of a hypothetical new request," and even if a new request "may [] resurrect some of the issues that are no longer live in this case," the court lacked jurisdiction to evaluate a grant of inspection "that now has no force or effect in the real world." *Id.* As in *Front Range*, Plaintiff may submit a new application for insurance, and if NCUA were to deny that application, Plaintiff could file a lawsuit challenging that denial. That speculative possibility does not change the fact that Plaintiff's case is moot today. Accordingly, the court must dismiss this case for lack of subject matter jurisdiction.

## CONCLUSION

For the reasons set forth above, the Court should grant Defendant's Motion for Judgment on the Pleadings and dismiss Plaintiff's Complaint.

DATED: February 23, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

BOB TROYER
United States Attorney

LESLEY FARBY
Assistant Branch Director

*/s/ Rachael L. Westmoreland*
Rachael L. Westmoreland (GA Bar No. 539498)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C.  20530
Telephone: (202) 616-8491
Facsimile: (202) 616-8470
E-mail: rachael.westmoreland@usdoj.gov

*Counsel for Defendant*